UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
PRINCE GEORGE'S HOSPITAL        )
CENTER,                         )
                                )
          Plaintiff,            )
                                )
          v.                    )      Civil Action No. 03-2392 (RWR)
                                )
ADVANTAGE HEALTHPLAN INC.,      )
                                )
          Defendant.            )
_____ )

## MEMORANDUM OPINION

Plaintiff Prince George's Hospital Center ("P.G. Hospital")
filed this action claiming entitlement under the common law of
subrogation as a third-party beneficiary of contracts entered
into between defendant Advantage Health Plan, Inc. ("Advantage"),
a managed care organization ("MCO"), and the District of
Columbia, and otherwise, to reimbursement from Advantage for
emergency services provided between July 2001 and August 2002 to
five patients insured under defendant's plan.  Advantage has
moved to dismiss this case under Federal Rule of Civil Procedure
12(b)(6) for failure to state a claim and Rule 12(b)(1) for lack
of subject matter jurisdiction, and in the alternative, moved for
a more definite statement under Rule 12(e).  Because
P.G. Hospital has not alleged facts to support a cause of action
for subrogation and there is no private cause of action under the
Medicaid statute, P.G. Hospital's claim for subrogation and claim
that it is entitled by law to reimbursement will be dismissed.

-2-

Because P.G. Hospital has alleged facts to support a cause of action for breach of contract as a third-party beneficiary of the MCO contracts and because P.G. Hospital has pled that it was not properly advised of its administrative rights, Advantage's motion to dismiss will be denied as to that claim.  Because P.G. Hospital has alleged facts to support a cause of action with respect to Eunice J. and Eugenia P., Advantage's motion to dismiss the claims on the basis that P.G. Hospital failed to provide timely and proper notice of treatment as to Eunice J. and Eugenia P. will be denied.  Because P.G. Hospital has failed to allege any statutory right to attorneys' fees, Advantage's motion to dismiss P.G. Hospital's claim for attorneys' fees will be granted.

<u>BACKGROUND</u>

Under the Medicaid statute,[1] Advantage entered into MCO contracts[2] with the District of Columbia to provide medical insurance to Medicaid-eligible residents of the District of Columbia.  (<u>See</u> Def.'s Mem. P. & A. Supp. Mot. Dismiss ("Def.'s Mem."), Exs. A & B.)  In turn, Advantage entered into contracts

---

[1] Congress enacted the Medicaid statute as part of Title XIX of the Social Security Act.  <u>See</u> 42 U.S.C. § 1396 <u>et seq.</u>

[2] Advantage has attached the 2000 and 2002 MCO contracts to its motion to dismiss.  (<u>See</u> Def.'s Mem., Exs. A & B.)  No 2001 MCO contract is in the record.  According to Advantage, the 2000 MCO contract was in effect from March 31, 2000 until April 1, 2002, and the 2002 MCO contract was in effect from April 1, 2002 and at all times beyond that are relevant to this case.  (<u>Id.</u>)

-3-

with a number of District of Columbia hospitals and health care
providers to provide services to members of Advantage's managed
care plan ("plan"). (See Compl. ¶ 7.) These hospitals and
providers are "in-network" providers under Advantage's plan.
P.G. Hospital, located in Maryland, has no provider contract with
Advantage and therefore is considered an "out-of-network"
hospital under Advantage's plan.

P.G. Hospital alleges that between July 2001 and
August 2002, it provided emergency services to five members of
Advantage's plan.[3] According to P.G. Hospital, it had not
realized that each of the patients was covered by Advantage due
to incorrect or incomplete information the patients had provided
to P.G. Hospital. (See Compl. ¶¶ 12, 16, 31-33, 40-41.)
P.G. Hospital states that upon learning of each patient's
coverage under Advantage's plan, P.G. Hospital notified Advantage
of the emergency admission and treatment and sought payment from
Advantage. (Id. ¶¶ 17, 27, 29, 33, 36, 42, 46, 54, 56.)
P.G. Hospital represents that Advantage denied payment in each
case, claiming that P.G. Hospital had failed to notify Advantage
of the admissions in a timely manner. (Id. ¶¶ 19, 29, 36, 46,

---

[3] P.G. Hospital has submitted letters from Advantage to
P.G. Hospital in which each of the patients is identified by
Advantage as a member of its plan. (Pl.'s Opp'n, Ex. 7 ("Denial
Letters").)

-4-

56; Pl.'s Opp'n at 8, Ex. 7 ("Denial Letters").)[4]  P.G. Hospital

asserts that once it notified Advantage of each patient's

admission, Advantage made no request to have the patient

transferred to an in-network facility.  (Pl.'s Opp'n at 8.)

P.G. Hospital also asserts that it appealed Advantage's denials

of its requests for payment, but that those appeals were denied.

(Id.)

        The complaint alleges that P.G. Hospital is "lawfully

subrogated to the cause of action of the members/patients,

entitled by law, and as a third-party beneficiary of the contract

between the District and the Defendant, to payment for services

rendered."  (Compl. at ¶¶ 18, 28, 35, 45 & 55.)  Advantage

contends that P.G. Hospital cannot establish a cause of action

under these theories.  Advantage now moves to dismiss this case

under Rules 12(b)(6) and 12(b)(1) for failure to state a claim

and for lack of subject matter jurisdiction, and in the

alternative, moves under Rule 12(e) for a more definite

statement.

DISCUSSION

        "'A complaint can be dismissed under Rule 12(b)(6) when a

plaintiff fails to state a claim upon which relief can be

---

        [4] Among the denial letters submitted by the P.G. Hospital is
a letter from Advantage to Willie C. Blair, M.D. stating that, in
considering Blair's appeal, Advantage had "made an exception" for
Blair and authorized payment to Blair for his treatment of one of
the patients at issue in the complaint.  (See Pl.'s Opp'n,
Ex. 7.)

-5-

granted.'" <u>Howard Univ. v. Watkins</u>, Civil Action No. 07-492

(RWR), 2012 WL 1454487, at *2 (D.D.C. April 27, 2012) (quoting

<u>Peavey v. Holder</u>, 657 F. Supp. 2d 180, 185 (D.D.C. 2009) (citing

Fed. R. Civ. P. 12(b)(6))).  Motions to dismiss under Rule

12(b)(6) test the legal sufficiency of a complaint.

<u>Smith-Thompson v. Dist. of Columbia</u>, 657 F. Supp. 2d 123, 129

(D.D.C. 2009).

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, acceptable as true,
> to "state a claim to relief that is plausible on its
> face." . . .  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court
> to draw the reasonable inference that the defendant is
> liable for the misconduct alleged.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell</u>

<u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556, 570 (2007)).  "The

complaint must be construed in the light most favorable to the

plaintiff and "'the court must assume the truth of all

well-pleaded allegations.'" <u>Watkins</u>, 2012 WL 1454487, at *2

(quoting <u>Warren v. Dist. of Columbia</u>, 353 F.3d 36, 39 (D.C. Cir.

2004)).  "[A] complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations[.]" <u>Twombly</u>,

550 U.S. at 555.  However, "[w]here a complaint pleads facts that

are 'merely consistent with' a defendant's liability, it 'stops

short of the line between possibility and plausibility of

entitlement to relief.'" <u>Iqbal</u>, 556 U.S. at 662 (quoting

<u>Twombly</u>, 550 U.S. at 557.

     When assessing a motion brought under Rule 12(b)(6), a court

-6-

avoids consideration of matters outside the pleadings, but may

consider "the facts alleged in the complaint, documents attached

as exhibits or incorporated by reference in the complaint,"

Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002),

public records, and "documents 'upon which the plaintiff's

complaint necessarily relies' even if the document is produced

not by the plaintiff in the complaint but by the defendant in a

motion to dismiss[.]" Hinton v. Corr. Corp. of Am., 624 F. Supp.

2d 45, 46 (D.D.C. 2009) (quoting Parrino v. FHP, Inc., 146 F.3d

699, 706 (9th Cir. 1998)); Hartline v. Sheet Metal Workers' Nat'l

Pension Fund, 134 F. Supp. 2d 1, 8 (D.D.C. 2000).  Here, because

P.G. Hospital refers to MCO contracts which are central to its

claims, the MCO contracts may be considered in determining the

motion to dismiss upon which one of P.G. Hospital's claims is

based.

I.   SUBROGATION

P.G. Hospital asserts in its complaint that it is "lawfully

subrogated to the cause of action of the members/patients . . .

to payment for services rendered" and may collect those debts

from Advantage.  (Compl. ¶¶ 18, 28, 35, 45 & 55.)  Advantage

argues that P.G. Hospital has failed to establish the predicate

factors for a subrogation claim by failing to demonstrate that

the patients have a cause of action against Advantage, that

P.G. Hospital has paid a debt on behalf of the patients, or that

the patients had a debt to P.G. Hospital.  (Def.'s Mem. at 10.)

-7-

Advantage contends, then, that P.G. Hospital, standing in the shoes of the patients, does not have any rights against Advantage. (Id. at 11.)

P.G. Hospital argues in response that it has a claim of equitable subrogation because public policy supports insuring indigent persons and paying those providers and hospitals that provide emergency services to indigent persons. (Pl.'s Opp'n at 12.) According to P.G. Hospital, because it has provided treatment to patients covered by Advantage's plan, it should be substituted for the patients and able to exercise the patients' rights to recover benefits under the plan. (Id. at 12-13.) P.G. Hospital further contends that Advantage "in good conscience" ought to pay because it has been unjustly enriched in that it has received premiums from the District of Columbia and the federal government to provide insurance, but has not reimbursed P.G. Hospital for emergency services rendered to the patients Advantage insures. (Id.)

Subrogation is "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." Thrasher-Lyon v. Illinois Farmers Ins. Co., No. 11-4473, 2012 WL 983774, at *8 n.1 (N.D. Ill. March 20, 2012) (quoting Black's Law Dictionary (9th ed. 2009)); see also Group Hospitalization and Medical Svcs., Inc. v. Richardson, 946 F. Supp. 50, 53 (D.D.C. 1996). Equitable subrogation, also known as

-8-

legal subrogation, "arises by operation of law or by implication
in equity to prevent fraud or injustice." <u>Black's Law Dictionary</u>
(9th ed. 2009).  Equitable subrogation may arise "when (1) the
paying party has a liability, claim, or fiduciary relationship
with the debtor, (2) the party pays to fulfill a legal duty or
because of public policy, (3) the paying party is a secondary
debtor, (4) the paying party is a surety, or (5) the party pays
to protect its own rights or property." <u>Id.</u>  "Where one party
has paid the debt of another, justice requires that the payor be
able to recover his loss from the one who should have paid it, to
prevent unjust enrichment . . ..  The rights of the party who
paid the debt in no way depend upon showing a contract provision
or formal assignment; evidence of payment is sufficient." <u>Nat'l
Union Fire Ins. Co. v. Riggs Nat'l Bank</u>, 646 A.2d 966, 968 (D.C.
1994).

Under District of Columbia law, equitable subrogation may be
appropriate where each of the following conditions is satisfied:

> (1) Payment [was] made by the subrogee to protect his
> own interest.  (2) The subrogee [has] not . . . acted
> as a volunteer.  (3) The debt paid [was] one for which
> the subrogee was not primarily liable.  (4) The entire
> debt [has] been paid. (5) Subrogation [would] not work
> any injustice to the rights of others.

<u>In re Stevenson</u>, No. 06-00306, 2008 WL 748927, *5 (Bankr. D.C.
Mar. 17, 2008) (quoting <u>Eastern Sav. Bank, FSB v. Pappas</u>, 829
A.2d 953, 961 (D.C. 2003)).

-9-

P.G. Hospital has not sufficiently pled a claim for equitable subrogation because it has not demonstrated that the patients would have claims for monetary compensation against Advantage which would result in a "debt" that P.G. Hospital extinguished, nor has P.G. Hospital identified existing claims that the patients make against Advantage for which P.G. Hospital could step into their shoes to advance.  Cf. Group Hospitalization, 946 F. Supp. at 53 (determining that an insurer had no right to subrogation where nothing in the record indicated that payments by the insurer for medical care were for a debt of the alleged insured).  P.G. Hospital alleges that it provided emergency services to the patients under the Emergency Medical Treatment and Active Labor Act ("EMTALA"),[5] and it now seeks to be reimbursed for the cost of those services.  But P.G. Hospital

---

[5] The pertinent provision of the EMTALA provides:

If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has emergency medical condition, the hospital must provide either–

(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
(B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

42 U.S.C. § 1395dd(b)(1).  The EMTALA extends to anyone who seeks emergency room assistance, without distinction between persons with and without insurance.  Gatewood v. Washington Healthcare Corp., 933 F.2d 1037, 1040 (D.C. Cir. 1991).

cites no case law to support a subrogation claim in which the
party seeking to be subrogated to the rights of another has
merely rendered services rather than satisfied a debt.
Accordingly, Advantage's motion to dismiss P.G. Hospital's claim
for subrogation will be granted.[6]

II.  CAUSE OF ACTION UNDER THE MEDICAID STATUTE

Advantage argues that P.G. Hospital cannot state a private
cause of action against it under the Medicaid statute.
P.G. Hospital responds that the Medicaid laws have been construed
to grant providers of emergency services with a cause of action
for nonpayment.  (Pl.'s Opp'n at 17.)

The Medicaid statute, enacted as part of Title XIX of the
Social Security Act, 42 U.S.C.A. § 1396 et seq.,

> is a cooperative federal-state program through
> which the Federal Government provides financial
> assistance to States so that they may furnish
> medical care to needy individuals.  Although
> participation in the program is voluntary,
> participating States must comply with certain
> requirements imposed by the Act and regulations
> promulgated by the Secretary of Health and Human
> Services ("Secretary").  To qualify for federal
> assistance, a State must submit to the Secretary
> and have approved a 'plan for medical
> assistance,' that contains a comprehensive
> statement describing the nature and scope of
> the State's Medicaid program.  The state plan is
> required to establish, among other things, a

---

[6] Advantage argues in the alternative that the court "lacks
subject matter jurisdiction to hear any claim based on rights
that P.G. Hospital may have by subrogation" because the patients
did not exhaust their administrative remedies with respect to
payment denials.  (Def.'s Mem. at 11.)  Because the subrogation
claim will be dismissed, this issue is moot.

scheme for reimbursing health care providers for
the medical services provided to needy individuals.

Wilder v. Virginia Hospital Ass'n, 496 U.S. 498, 503 (1990)

(citations omitted).  The Medicaid statute includes a waiver

provision which permits a state to contract with MCOs to provide

health care services to medicaid recipients.  See 42 U.S.C.

§§ 1396n, 1396u-2(1).  "Under the waiver provision, if a state

requests and receives a waiver from the Secretary of Health and

Human Services pursuant to 42 U.S.C. § 1396n(c), a state may

enter into contracts with MCOs to provide health care services to

qualifying recipients."  See Solter v. Health Partners of

Philadelphia Inc., 215 F. Supp. 2d 533, 535 (E.D. Pa. 2002).

MCOs, in turn, are permitted to enter into contracts with other

health care organizations.  See 42 U.S.C. § 1396u-2; 42 C.F.R.

§ 438.210.

    With respect to emergency services, the Medicaid statute

requires that an MCO provide coverage for emergency services

"without regard to prior authorization or the emergency care

provider's contractual relationship with the organization or

manager . . .."  42 U.S.C. § 1396u-2(b)(2)(A)(I).  The Medicaid

statute also provides that "[e]ach medicaid managed care

organization shall establish an internal grievance procedure

under which an enrollee who is eligible for medical assistance

under the State plan under the subchapter, or a provider on

behalf of such an enrollee, may challenge the denial of coverage

-12-

of or payment for such assistance." 42 U.S.C. § 1396u-2(b)(4).
The section of the statute concerning payment of health care
providers states that:

> [a] contract under section 1396b(m) of this title with
> a medicaid managed care organization shall provide
> that the organization shall make payment to health
> care providers for items and services which are
> subject to the contract and that are furnished to
> individuals eligible for medical assistance under
> the State plan under this subchapter who are enrolled
> with the organization on a timely basis consistent
> with the claims payment procedures described in
> section 1396a(a)(37)(A) of this title, unless the
> health care provider and the organization agree to an
> alternate payment schedule.

42 U.S.C. § 1396u-2(f).

P.G. Hospital argues that there is an implied private cause
of action under the Medicaid statute for health care providers
against MCOs for nonpayment, citing Mallo v. Public Health Trust
of Dade County, Florida, 88 F. Supp. 2d 1376 (S.D. Fla. 2000),
Wilder, 496 U.S. at 498, and Ohio Hospital Ass'n v. Ohio Dep't of
Human Serv., 579 N.E.2d 695 (Ohio 1991), cert. denied, 503 U.S.
940 (1991).  However, in each of those cases, the question was
whether the Medicaid statute created a federal right enforceable
against a State or its agencies under 42 U.S.C. § 1983.[7]  These

_____

[7] The Supreme Court has held that the Boren Amendment to the
Medicaid statute creates a federal right that is enforceable by
health care providers against a state under § 1983.  Wilder, 496
U.S. at 524 (concluding that health care providers had an
enforceable federal right under § 1983 to reasonable and adequate
Medicaid rates in their state plans).  A number of other courts
have also found that portions of the Medicaid statute are
enforceable under § 1983 against state officials.  See Ohio
Hospital Ass'n, 579 N.E.2d at 698-99; Amisub (PSL), Inc. v.

-13-

cases are inapplicable here because P.G. Hospital has sued a
private company, to which § 1983 is inapplicable.  Furthermore,
an MCO is not deemed a state actor by virtue of its contract with
the state.  See Taormina v. Suburban Woods Nursing Homes, 765 F.
Supp. 2d 667, 672 (E.D. Pa. 2011); Karen L. ex rel. Jane L. v.
Physicians Health Services, Inc., 202 F.R.D. 94, 104-05 (D. Conn.
2001).

Because the Medicaid statute does not expressly authorize a
private cause of action to enforce its provisions, P.G. Hospital
must establish that Congress intended to create a private remedy
under the Medicaid statute.  See Suter v. Artist M., 503 U.S.
347, 363-64 (1992).  To determine whether the Medicaid statute
impliedly authorizes a private cause of action, a court must
apply the four-prong test laid out in Cort v. Ash, 422 U.S. 66,
78 (1975): (1) whether the statutes were created for the
plaintiff's special benefit, (2) whether there is evidence of
legislative intent to create a private remedy, (3) whether a
private remedy would be consistent with legislative purposes, and

Colorado Dep't of Social Servs., 879 F.2d 789, 793-94 (10th Cir.
1989) (holding that Title XIX providers have federal rights
enforceable in a § 1983 action); Westside Mothers v. Haveman, 289
F.3d 852, 863 (6th Cir. 2002) (finding that professional medical
organizations had standing to assert a § 1983 claim against state
officials for violation of the Medicaid statute provisions
requiring early and periodic screening, diagnosis, and treatment
for Medicaid-eligible children); Mallo, 88 F. Supp. 2d at 1391
(holding that patient could sue state agency under § 1983 for
breaching its obligation under the balance billing provision of
the Medicaid statute).

-14-

(4) whether the area is one traditionally relegated to the states.  P.G. Hospital does not address these factors in its opposition to Advantage's motion to dismiss.  In any event, a number of federal courts have declined to find a private right of action under the Medicaid statute.  See e.g., Baum v. Northern Dutchess Hosp., 764 F. Supp. 2d. 410, 415 (N.D.N.Y. 2011) (holding that the Medicaid statute, as amended by the Federal Nursing Home Reform Amendments, did not create a private cause of action for nursing home residents against nursing homes); Duncan v. Johnson-Mathers Health Care, No. 5:09-CV-00417, 2010 WL 3000718, at *9-10 (E.D. Ky. July 28, 2010) (holding that the Medicaid statute did not create an enforceable cause of action against a private health care facility); Solter, 215 F. Supp. 2d at 540 (holding that a patient did not have a private right of action under the Medicaid statute against an MCO to enforce Medicaid guidelines and waiver provisions); Stewart v. Bernstein, 769 F.2d 1088, 1093-94 (5th Cir. 1985) (holding that a Medicaid recipient who was involuntarily removed from private nursing did not have a private right of action under the Medicaid statute against a nursing home); Brogdon v. Nat'l Healthcare Corp., 103 F. Supp. 2d 1322, 1326 (N.D. Ga. 2000) (concluding that residents of a long-term health care facility did not have a private right of action against a nursing home under the Medicaid statute); Ayres v. Beaver, 48 F. Supp. 2d 1335, 1339-40 (M.D. Fla. 1999) (finding that nursing home residents did not have a private right

-15-

of action against a nursing home under the Medicaid statute);
Fuzie v. Manor Care Inc., 461 F. Supp. 689, 696 (N.D. Ohio 1977)
(stating that no private remedy may be implied under the Medicaid
statute); Slovinic v. Illinois Dept. of Human Services, No. 02-C-
4124, 2005 WL 442555, at *7 (N.D. Ill. February 22, 2005)
(dismissing plaintiff's claim in part because the Medicaid
statute did not provide a private right of action); Carroll v.
Butterfield Health Care, Inc., No. 02-4903, 2003 WL 22462604, at
*3 (N.D. Ill. Oct. 29, 2003) (stating that the Medicaid statute
does not create a private cause of action).

In Solter, the court addressed whether Congress intended to
create a private right of action to enforce the Medicaid
guidelines and waiver provisions.  Medicaid recipients argued
that the MCO's decision not to approve dental surgery denied them
"medically necessary" services in violation of the Medicaid
guidelines and waiver provisions.  The court applied the four
factors in Cort v. Ash and determined that there was no implied
right of action under the Medicaid statute.  In so holding, the
court first determined that Medicaid recipients were intended
beneficiaries of the guidelines and waiver provisions of the
Medicaid statute.  Solter, 215 F. Supp. 2d at 537.  The court
then noted as to the second Cort factor that there was no
indication of Congressional intent to create a private remedy for
a Medicaid patient to bring a private action under the statute,
id. at 537-38, and that the Medicaid statute's provision for an

-16-

administrative process created by the participant state for

beneficiaries to seek redress for benefit determinations provided

evidence that Congress "anticipated that the states would provide

the remedy for vindication of the guidelines and waiver

provisions of the Medicaid Act." Id. at 539.  The court held

under the third Cort factor that an implied right of action under

the statute was not consistent with the Medicaid legislative

scheme, which places "administration of the program under the

Medicaid Act in the hands of the states." Id. at 540.  Lastly,

the court addressed the fourth Cort factor, and determined that

the causes of action at issue -- negligence, breach of contract

and breach of fiduciary duty -- are historically determined by

state courts. Id.

    Similarly, applying the Cort v. Ash factors to the instant

case, there is no implied cause of action under the Medicaid

statute for reimbursement for emergency services allegedly

provided to Medicaid beneficiaries.  With respect to the first

factor, there is evidence that both health care providers and

Medicaid recipients, and not the healthcare providers alone, are

the intended beneficiaries of the relevant provisions.  For

example, the section entitled "Timeliness of Payment" provides:

> A contract under section 1396b(m) of this title with
> a medicaid managed care organization shall provide
> that the organization shall make payment to health
> care providers for items and services which are
> subject to the contract and that are furnished to
> individuals eligible for medical assistance under
> the State plan under this subchapter who are enrolled

-17-

> with the organization on a timely basis consistent
> with the claims payment procedures described in
> section 1396a(a)(37)(A) of this title, unless the
> health care provider and the organization agree to an
> alternate payment schedule.

42 U.S.C. § 1396u-2(f). Also, the "Beneficiary protections"

include a number of protections for the plan enrollees, including

the requirement that the MCO provide coverage for emergency

services without prior authorization or the emergency care

provider's contractual relationship with the MCO.  See 42 U.S.C.

§ 1396u-2(b)(2)(A)(I).  The section also provides that the MCO

establish an internal grievance procedure through which an

enrollee or a health care provider may challenge denial of

coverage.  See 42 U.S.C. § 1396u-2(b)(4).

Second, there is no language in the statute which expresses

a legislative intent to create a private remedy.  P.G. Hospital

relies in large part on letters interpreting the Medicaid

provisions that the Centers for Medicare & Medicaid Services

(CMS) issued to state medicaid directors.  (Pl.'s Opp'n at 2-4.)

A February 20, 1998 letter includes an attachment entitled

"Clarification of Beneficiary Access and MCO Financial

Responsibilities for Emergency Services" which provides that

"MCOs may not require prior authorization for emergency services.

This applies to out-of-network as well as to in-network services

which a beneficiary seeks in an emergency."  (Pl.'s Opp'n, Ex. 3

at 3.)  An April 18, 2000 letter provides that the applicable law

"prohibits prior authorization for coverage of emergency

services.  This means that services that meet the definition of emergency services must be covered, and beneficiaries must not be charged for these services, except for any permissible nominal cost-sharing amounts.  Therefore, . . . an MCO, may [not] make payment for emergency services contingent on the beneficiary providing the . . . MCO with notification, either before or after receiving emergency services."  (Pl.'s Opp'n, Ex. 4 at 2.)

Notably absent from the statutory language and the language in the CMS letters is any indication that a care provider has a private cause of action against an MCO.  In addition, P.G. Hospital cites no law to support its implicit contention that the CMS letters are legally binding.  Even if P.G. Hospital had, P.G. Hospital points to no language in the statute or letters that provides that an out-of-network health care provider may have a cause of action against an MCO for failure to pay for covered emergency services.  Rather, the only language regarding an MCO's failure to pay involves the sanctions available to the State in the event an MCO does not comply with the statute.  See 42 U.S.C. § 1396u-2(e).  The same February 20, 1998 CMS letter cited by P.G. Hospital interprets this language as well, stating that where an MCO fails to cover emergency screening or stabilization services, it may be subject to intermediate sanctions or termination by the State.  The letter also provides that HCFA may impose sanctions "if the failure to cover emergency services as

required . . . adversely affects . . . a Medicaid beneficiary."
(Pl.'s Opp'n, Ex. 3 at 2.)

As to the third <u>Cort</u> factor, a private right of action is
not consistent with the underlying purposes of the legislative
scheme for the same reasons it was not in <u>Solter</u>, namely, that
with respect to a participating state's decision to contract with
an MCO, the legislative scheme leaves the administration of the
program to the state.  In the case at hand, the statutory
language requiring an MCO to develop a grievance procedure for
beneficiaries and providers who wish to challenge a denial
supports a finding that Congress intended the states to
administer this program, which would not be consistent with
having a private right of action under the statute.

Under the fourth <u>Cort</u> factor, the cruxes of the causes of
action alleged in this case are subrogation and breach of
contract.  These are traditionally state law claims, and
therefore, it would be inappropriate to infer a cause of action
based on such state law claims to be redressed by federal law.
<u>Solter</u>, 215 F. Supp. 2d at 540.

Because P.G. Hospital has not established under the four
factors of <u>Cort v. Ash</u> that there is an implied private right of
action under the Medicaid statute, and because P.G. Hospital can
point to no case law or language in the Medicaid statute to
support a finding that an out-of-network provider has a private
cause of action under the statute against an MCO which fails to

-20-

reimburse it for emergency services, P.G. Hospital has not established a viable cause of action under the Medicaid statute.

III. THIRD-PARTY BENEFICIARY OF THE MCO CONTRACT

P.G. Hospital argues that it has a cause of action against Advantage for non-payment as a third-party beneficiary of the MCO contract.  (Pl.'s Opp'n at 19.)  In its motion to dismiss, Advantage contends P.G. Hospital's claim fails because P.G. Hospital is not an intended third-party beneficiary under the MCO contracts.

"Under general contract principles, a third party beneficiary of a contract may bring an action against the principal parties to that contract only when the parties to the contract intended to create and did create enforceable contract rights in the third party." Sealift Bulkers, Inc. v. Repub. of Armenia, Civ. Action No. 95-1293 (PLF), 1996 WL 901091, at *4 (D.D.C. Nov. 22, 1996); Monument Realty LLC v. Wash. Metro. Area Transit Auth., 535 F. Supp. 2d 60, 70 (D.D.C. 2008) (stating that "one who is not a party to a contract may nonetheless sue to enforce the contract's provisions if the contracting parties intend the third party to benefit directly thereunder"). "Government contracts by their nature benefit the public, but only in rare circumstances will courts deem individual members of the public to be intended beneficiaries empowered to enforce those contracts in court." Edwards v. Aurora Loan Servs., 791 F. Supp. 2d 144, 151 (D.D.C. 2011).  "Government contracts often

benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." Id. (quoting Restatement (Second) of Contracts § 313(2), cmt. a (1981)); see also Moore v. Gaither, 767 A.2d 278, 287 (D.C. 2001)).

In Moore, the D.C. Court of Appeals held that a management agreement between the District of Columbia Department of Corrections ("DC DOC") and a private facility did not create in inmates a right to representation at disciplinary hearings. Moore, 767 A.2d at 287-88. Although the management agreement required the facility to follow a statute which required representation at disciplinary hearings, the facility had secured a written waiver from the DC DOC of its obligation to adhere to the statute. Id. at 287. The court held that because the management agreement expressly stated that its provisions "are for the sole benefit of the Parties hereto and shall not be construed as conferring any rights on any other person[,]" it was clear the inmates were merely incidental beneficiaries to the contract and could not enforce the contract. Moore, 767 A.2d at 287 (emphasis omitted).

The District of Columbia and Advantage, an MCO, are parties to the contracts at issue. As an initial matter, unlike the agreement in Moore, there is no express language in the MCO contracts precluding third-party beneficiary rights. The 2000 MCO contract provides that the MCO "shall reimburse facilities at

the contracted rate for network facilities and at the current
Medicaid rate for non-network facilities for the following
services:  (1) the evaluation of an emergency medical condition
[and] . . . (2) all medically necessary care and services
furnished prior to the time an enrolled becomes stabilized . .
..″ (Def.'s Mot., Ex. A at 6.)  The 2002 MCO contract provides
that the MCO "shall be responsible for covering emergency
services, as defined above, provided to Enrollees at either in-
network or out-of-network providers, without regard to prior
authorization."  (Def.'s Mot., Ex. B at 61.)  It further provides
that the MCO "shall cover all emergency services provided by out-
of-network providers."  (Pl.'s Opp'n, Ex. 8 at 9.)

Under the contracts, Advantage has promised to provide
payment to in-network and out-of-network providers under certain
circumstances.  These promises to pay providers establish that
the parties intended in-network and out-of-network providers to
benefit from the contracts.  See Beckett, 995 F.2d at 288; Hook,
972 F.2d at 1015.  The Second Restatement provides

> (1) Unless otherwise agreed between promisor and
> promisee, a beneficiary of a promise is an intended
> beneficiary if recognition of a right to performance
> in the beneficiary is appropriate to effectuate the
> intention of the parties and either
>
> (a) the performance of the promise will satisfy an
> obligation of the promisee to pay money to the
> beneficiary; or
>
> (b) the circumstances indicate that the promisee
> intends to give the beneficiary the benefit of the
> promised performance.

-23-

> (2) An incidental beneficiary is a beneficiary who
> is not an intended beneficiary.

Restatement (Second) of Contracts § 302.  In-network and out-of-network providers are intended beneficiaries under the contracts because in order to effectuate the intention of Advantage and the District of Columbia in the contract -- for Advantage to pay for emergency services provided by in-network and out-of-network providers -- the health care provider's right to payment must be recognized.  In addition, if P.G. Hospital's allegations are later established to be true, Advantage's payment to P.G. Hospital will satisfy the District of Columbia's obligation to reimburse health care providers of emergency-related services to Medicaid recipients.  The language of the contracts at issue creates an obligation in the MCO to pay those health care providers that render emergency treatment to the MCO's enrollees.

The Second Restatement of Contracts further provides that

> A promise in a contract creates a duty in the promisor
> to any intended beneficiary to perform the promise, and
> the intended beneficiary may enforce the duty.

Restatement (Second) of Contracts § 304.  As a result of Advantage's promise to the District of Columbia under the MCO contracts, Advantage has a duty to make certain payments to providers, as third-party beneficiaries, which may be enforced by the providers against Advantage as the alleged breaching promisor.

-24-

Because P.G. Hospital has alleged a cause of action as a third-party beneficiary under the MCO contracts, Advantage's motion to dismiss for failure to state a claim will be denied as to this claim.

Advantage argues that even if P.G. Hospital is an intended third party beneficiary under the MCO contracts, P.G. Hospital's claim fails because P.G. Hospital failed to exhaust its administrative remedies by not requesting a fair hearing under 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 431.220 within 90 days of the notice of denied payment.  (Def.'s Mot. at 12.)  Section 1396a(a)(3) provides that the state Medicaid plan must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness . . .."  Section 431.220 of the regulations provides that the State must provide an opportunity for hearing to "[a]ny applicant who requests it because his claim for services is denied or is not acted upon with reasonable promptness."

The MCO contracts provide that Advantage is to establish a claims and appeals process for providers.  The 2002 MCO contract provides that

> The Contractor shall allow network and non-network
> providers to submit an initial claim for covered
> and, if required, prior authorized services for a
> maximum period of ninety (90) days following the
> provision of such services.

-25-

(Pl.'s Opp'n, Ex. 8 at C.11.1.2.)   The contract also provides
that

> The Contractor shall reconsider a decision to deny,
> reduce, terminate, or delay authorization of a
> requested covered service or payment denial in
> response to an a [sic] grievance to request
> submitted by an Enrollee or a provider on behalf
> of an Enrollee.  Should the Enrollee disagree with
> the Contractor's response to a grievance, the
> Enrollee or a provider on the Enrollee's behalf,
> may appeal the Contractor's decision.

(Pl.'s Opp'n, Ex. 8 at C.14.3.1.)   The contract requires that

Advantage, in its denial of a payment request, notify the

enrollee of its "right to file a complaint or grievance with the

Contractor and the right to request a Fair Hearing at any time

. . .."  (Def.'s Mot., Ex. B at C.14.3.2.2.)   The contract

further requires that Advantage "notify the Enrollee or the

Enrollee's designee of the right to a fair hearing with a

District hearing officer, each time notification of an adverse

decision on a complaint, grievance, or appeal is sent to an

Enrollee or the Enrollee's designee."  (Def.'s Mot., Ex. B at

C.14.4.1.)   The regulations also provide that notice of the right

to hearing be included in the adverse decision.   See 42 C.F.R.

§ 438.404.

Despite the requirement under the MCO contracts that

Advantage notify a denied provider of the right to a fair

hearing, the letters from Advantage to P.G. Hospital denying P.G.

Hospital's claims do not provide any information regarding the

right to a fair hearing.  (Pl.'s Opp'n, Ex. 7 ("Denial

letters").)  Advantage, then, should not be heard to complain of
any failure by P.G. Hospital to exhaust administrative rights
about which Advantage failed to notify P.G. Hospital.
Accordingly, Advantage's motion to dismiss P.G. Hospital's third-
party beneficiary claim for failure to exhaust its administrative
remedies will be denied.

IV.  TIMELINESS OF REQUESTS FOR PAYMENT

Advantage argues that P.G. Hospital's claims as to patients
Eunice J. and Eugenia P. should be dismissed because
P.G. Hospital failed adequately to plead that it provided timely
notice of treatment as to Eunice J. and that the requests for
payment were proper as to Eugenia P.  (Def.'s Mot. at 17.)
Advantage bases its argument on the fact that P.G. Hospital
stated in its complaint that timely and proper notice was
provided as to all other patients, and that P.G. Hospital has
pled itself out of court with respect to Eunice J. and Eugenia P.
due to the omission of the word "timely" as to Eunice J. and the
word "proper" as to Eugenia P.  Advantage fails to identify any
contract provision that requires P.G. Hospital to notify it of
emergency services within a certain time frame or in a certain
manner.  Therefore, Advantage has not shown that P.G. Hospital
has failed to allege plausible claims as to Eunice J. and Eugenia
P.  Accordingly, Advantage's motion to dismiss the claims as to
Eunice J. and Eugenia P. on the basis that P.G. Hospital failed

-27-

timely and properly to notify Advantage of treatment of these patients will be denied.

V.   ATTORNEYS' FEES

Advantage seeks to dismiss P.G. Hospital's claim for attorneys' fees because P.G. Hospital has failed to establish any statutory right to attorneys' fees.  "'In the United States, parties are ordinarily required to bear their own attorney's fees -- the prevailing party is not entitled to collect from the loser. . . .  Under this American Rule, we follow a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'"  Dist. of Columbia v. Straus, 705 F. Supp. 2d 14, 15 (D.D.C. 2010) (quoting Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health & Human Resources, 532 U.S. 598, 602 (2001) (internal quotation omitted)).  Here, there is no explicit statutory authority which permits an award of attorneys' fees.  Accordingly, Advantage's motion to dismiss will be granted as to P.G. Hospital's claim for attorneys' fees.

CONCLUSION

P.G. Hospital has not alleged a statutory right to attorneys' fees or facts sufficient to support a cause of action for subrogation, and P.G. Hospital has no private cause of action under the Medicaid statute.  Thus, Advantage's motion to dismiss will be granted as to P.G. Hospital's claims for subrogation and attorneys' fees, and claim that it is entitled by law to reimbursement.  Because P.G. Hospital has alleged facts

-28-

sufficient to support a cause of action for breach of contract as a third-party beneficiary of the MCO contracts and because the record suggests that P.G. Hospital was not properly advised of its administrative rights to appeal, Advantage's motion to dismiss will be denied as to P.G. Hospital's claim for breach of contract as a third-party beneficiary.  Because P.G. Hospital has alleged facts to support a cause of action with respect to Eunice J. and Eugenia P., Advantage's motion to dismiss the claims on the basis that P.G. Hospital failed to provide timely and proper notice of treatment as to Eunice J. and Eugenia P. will be denied.

SIGNED this 6th day of June, 2012.

____/s/_____
RICHARD W. ROBERTS
United States District Judge